## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **BOB A. BRINSON,** | |
| **Petitioner,** | |
| | Case No. 18 cv 05007 |
| **v.** | |
| | Judge Mary M. Rowland |
| **WALTER NICHOLSON, Warden,** | |
| **Respondent**. | |

## <u>MEMORANDUM OPINION & ORDER</u>

Bob Brinson has filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his conviction for one count of possession of a controlled substance with intent to deliver. His petition presents a single ineffective assistance of counsel claim. (Dkt. 18, 5). For the reasons that follow, Brinson's petition [1] is granted.

## <u>BACKGROUND</u>

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Brinson has not provided clear and convincing evidence to rebut the presumption of correctness here, so this factual background is taken from the state court's findings. *People v. Brinson*, 2017 IL App. (2d) 150319-U (2d. Dist. 2017).

1

**1. Arrest and Original Trial Court Proceedings**

On March 21, 2007, the Waukegan Police Department executed a search warrant at Brinson's apartment. (Dkt. 27, Ex. M, 494:8-22).[1] In Brinson's bedroom, police found a red leather jacket containing several bags of rock cocaine, in addition to a plate and razor blade, both of which had white residue. (*Id*. at 495:3-21, 520:14-20). Police further found another plastic bag of cocaine, an electronic scale with white residue, $630 in cash, and a ledger with names of buyers and amounts of drugs purchased. (*Id*. at 521:19-22, 522:11-13, 617:2-5). In total, police recovered around 50.88 grams of cocaine worth approximately $5,000 on the street. (*Id*. at 615-51).

After the police collected the evidence, they read Brinson his *Miranda* warnings and questioned him about the cocaine. (Dkt. 27, Ex. M, 524:5-18). He proceeded to make incriminating statements, including that he saw the police earlier that day doing surveillance and intended to "pack my shit up," meaning the cocaine, before they arrived. (*Id*. at 524:22-525:2). When asked how much cocaine was in the apartment, he responded that there were two ounces (about 56 grams) and that he put the cocaine in his red jacket to take to his girlfriend's house. (*Id*. at 528:10-11). However, he fell asleep after taking medication for bipolar disorder, and did not leave his apartment before the police arrived. (*Id*. at 528:17-19).

A grand jury indicted Brinson on one count of unlawful possession of a controlled substance with intent to deliver in violation of 720 ILCS 570/401(a)(2)(A).

---

[1] For citations to the state court transcript, the Court cites to the blue page number at the top of each page. These pages are contained in the record at Dkt. 27, Exhibits M and N.

At his arraignment, the trial court informed Brinson that he faced a sentence between six and thirty years. (Dkt. 27, Ex. M, 4:6-24).

In September 2007, Brinson's lawyer Herb Abrams started negotiating a plea agreement with the State. (Dkt. 27, Ex. M, 65:14-23). On October 17, 2007, Abrams told the trial court that the parties had reached a deal under which Brinson would receive a seven-year sentence in exchange for a guilty plea. (*Id*. at 81:17-22; Dkt. 27, Ex. N). However, Abrams needed time to determine whether changes in Brinson's medications affected his ability to enter a guilty plea, so he sought a continuance to consult with Brinson's doctors. (*Id*. at 81:12-82:21).[2]

While out on bond and off his bipolar medication, Brinson was arrested again for shooting at his prior girlfriend's apartment. A grand jury indicted Brinson for several crimes, including attempted murder and aggravated discharge of a firearm. *Brinson*, 2017 IL App. (2d) 150319 ¶ 3. In light of the new charges, on April 22, 2008 the State withdrew its seven-year offer and made a new offer to resolve all outstanding charges against Brinson. The revised offer required Brinson to plead guilty to one count of possession of a controlled substance with intent to deliver and one count of attempted murder in exchange for a thirty-two year sentence. (Dkt. 27, Ex. N). That same day, the state amended the plea offer to a total of twenty-six years. (*Id* at Ex. N; *Id*. at Ex. M 144-145, 1110:5-11). Abrams advised Brinson not to accept

---

[2] Abrams advised the state court that Brinson suffered from liver failure and was placed on weekly Interferon injections. (Dkt. 27, Ex. M, 82:9-21). The Interferon injections required Brinson to stop his bipolar medications and Prozac. (*Id*. at 81:12-82:21). Abrams wanted to confer with Brinson's physician regarding Brinson's medications and whether Brinson was competent to enter a plea. (*Id*.). Abrams later informed the state court that Brinson was awaiting a liver transplant. (*Id*. at 100:5-12).

the offer, thinking that he might be able to get the offer down to twenty-two years. (*Id.* at 1108:13-17).

Brinson followed Abrams' advice. He did not accept the State's revised offer, which expired nine days later. (Dkt. 27, Ex. M, 160:19-20). Shortly thereafter, Abrams withdrew as Brinson's attorney.[3] After a trial on the drug charge, a jury convicted Brinson of one count of possession of a controlled substance with intent to deliver. *Brinson*, 2017 IL App. (2d) 150319 ¶ 5.

At sentencing, having reviewed Brinson's presentence investigation report, the trial court noted that Illinois' habitual criminal statute applied. (Dkt. 27, Ex. M, 906:11-13). Illinois' habitual criminal statute, since repealed, mandated a natural life sentence for defendants adjudicated as habitual criminals—those with two prior qualifying convictions. 720 ILCS 5/33B-1. The State then moved to adjudicate Brinson as a habitual criminal, and the sentencing court sentenced him to life imprisonment. (Dkt. 27, Ex. M, 906:21-24, 963:5-9). The trial court stated that it would have sentenced Brinson to sixty years in prison if the habitual criminal statute was inapplicable due to his extensive criminal history and "flagrant disregard" of community safety and societal norms. (*Id*. 961:21-962:3, 962:13-20).[4]

---

[3] It appears that Abrams withdrew on the original trial date, April 28, 2008. (Dkt. 27, Ex. M, 165:9-10).

[4] It is unclear from the record how the trial court would have sentenced Brinson to sixty years. Brinson faced a sentencing range of six-to-thirty years for the drug offense. Brinson faced six-to-thirty years on the attempted murder offense and related charges, but at the time of sentencing he was presumed innocent of those charges. At sentencing the State raised 720 ILCS 570/408 which allowed for a doubling of the maximum sentence if an individual had a prior drug offense. (Dkt. 27, Ex. M, 941:3-18). The defense attorney disputed this enhancement applied. (*Id.* at 945: 12-14). There is no finding by the sentencing judge in this regard.

**2. Post-Conviction Proceedings**

After the Illinois Appellate Court affirmed his conviction and sentence, (Dkt 27, Ex. A), Brinson filed a *pro se* post-conviction petition. The Circuit Court appointed counsel, who amended the petition to argue that Abrams rendered ineffective assistance of counsel in connection with plea negotiations. *Brinson*, 2017 IL App. (2d) 150319 ¶ 6. Specifically, the post-conviction petition claimed that Abrams failed to inform Brinson that he faced a life sentence as a habitual criminal and, had he known of that possibility, he would have accepted the plea offer from the State. *Id*. According to Brinson's affidavit, Abrams told him that he was facing six-to-thirty years in prison if convicted of the possession charge, that Brinson had originally accepted a seven year plea deal, and the State made Brinson a revised offer after he was arrested the second time. (Dkt. 21, 12). Brinson's affidavit stated that he would have accepted the revised offer if he had been informed that he was facing a mandatory life sentence. (*Id*.).

On January 15, 2015, the Circuit Court held an evidentiary hearing on Brinson's amended post-conviction petition. (Dkt. 27, Ex. M, 1102). Brinson testified that the State initially offered a seven-year plea agreement that Brinson accepted, but he did not enter the plea because of changes to his medications. It is a matter of record that after his arrest on new charges, the State offered a combined twenty-six year plea (six years for possession and twenty for attempted murder). According to Brinson's testimony, Abrams advised him to reject the offer because Abrams thought he could negotiate the plea down to twenty-two years. *Brinson*, 2017 IL App. (2d)

150319 ¶7. Brinson testified that Abrams made this recommendation without investigating his criminal history, without asking Brinson any questions about prior offenses, and without advising Brinson that he was subject to the habitual criminal statute. (Dkt. 27, Ex. M, 1089-91).[5] Consistent with his affidavit, Brinson testified: "I would have took that offer if I knew I was facing life" because "at least I would have had a chance to be free." (*Id*. at 1101:13; 1102:7-8; 1112:13-14).

The Circuit Court denied Brinson's ineffective assistance of counsel claim, finding that Brinson was not prejudiced because Brinson's testimony that he would have accepted the plea was not credible, and the state's case against him was "not that strong." (Dkt. 27, Ex. M, 1213:11, 1214:1-6). The Illinois appellate court affirmed. *Brinson*, 2017 IL App. (2d) 150319. The Illinois appellate court held that Brinson failed to show that he was prejudiced by counsel's failure. The court explained that to prevail on his claim, Brinson must show that "but for counsel's deficient performance, he…would have accepted the plea." *Brinson*, 2017 IL App. (2d) 150319 ¶ 14. Brinson failed to make that showing, according to the appellate court, because Brinson "should have known that, by rejecting the plea offer, he was exposing himself to at least the possibility of being convicted of both offenses and receiving consecutive sentences that could confine him to prison for the rest of his life." *Id*. at ¶ 15. In other words, the appellate court found that Brinson should have known that if he went to

---

[5] Brinson's trial attorney testified at the habeas hearing that the State produced a copy of Brinson's fingerprint-generated LEADS criminal history report which reflected both the 1978 and 1986 armed robbery convictions. (Dkt. 27. Ex. M, 1121:13-23). Brinson's current counsel argues that Abrams failed to review the LEADS report. (Dkt. 21, 18-19). Current counsel also notes that Brinson's convictions could have been found in the Lake County Circuit Court's records. (*Id*.).

trial, he ran the risk of an effective life sentence. The appellate court also opined that Brinson likely would not have accepted the plea based on his vigorous defense at trial and his insistence on his innocence. *Id*. at ¶¶ 15-17. Relying on the trial court's comment made in hindsight, that if he had been presented with the plea agreement he "mostly likely would not have accepted [it]", the appellate court held that Brinson failed to show that the plea would have been accepted. *Id*. at ¶ 17. Because the Circuit Court judge also presided over Brinson's trial, the appellate court determined that it "was in the best position to assess whether it would have accepted a plea agreement." *Id*.

The Illinois Supreme Court denied Brinson's petition for leave to appeal. *People v. Brinson*, 94 N.E.3d 664 (Ill. 2018). This habeas petition followed.

## **LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks omitted). To properly exhaust a claim, a petitioner must fully and fairly present federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

7

Even if fairly presented, however, a federal court may not grant habeas relief unless the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). But just because a federal court independently concludes that the relevant state court decision applied clearly established law erroneously does not mean that the court may grant the writ; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155 L. Ed. 24 144 (2003). "This is a difficult standard to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank,* 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 763 (7th Cir. 2002)). Where the last reasoned state court opinion does not evaluate a claim, this Court reviews that claim *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005).

## ANALYSIS

Under AEDPA, the relevant decision for review is the decision of the last state court to rule on the merits of the petitioner's claims. *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). Here, the last relevant decision is the October 2017 Illinois Appellate Court's decision that affirmed the state trial court's denial of Brinson's post-conviction petition. *Brinson*, 2017 IL App. (2d) 150319.

8

To receive habeas relief on the merits of an ineffective assistance of counsel claim, Brinson must meet the familiar performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 647 (1984). Under *Strickland*, Brinson must show that (1) his attorney's performance fell below an objective standard of reasonableness and (2) he was prejudiced by that deficient performance. *Id.* at 687-88. The Illinois Appellate Court only considered the prejudice element of *Strickland*, so this Court evaluates the performance issue *de novo*. *Rompilla*, 545 U.S. at 390.

## 1. Counsel's performance fell below objective standard of reasonableness

As petitioner notes, "the decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case," *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998), and "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether the plead guilty," *United States v. Day*, 696 F.2d 39, 43 (3d Cir. 1992). Petitioner argues that his counsel performed unreasonably in failing to advise Brinson that he was exposed to the Illinois' habitual criminal statute—which required a mandatory life sentence—and instead advising Brinson not to take the twenty-six-year plea.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms," as laid out in American Bar Association ("ABA") standards and precedent. *Strickland*, 466 U.S. at 694; *Rompilla v. Beard*, 545 U.S. 374, 387 (2005). The ABA guidelines require counsel to engage in

"appropriate investigation and study" prior to advising a defendant during plea negotiations, which includes the "responsibility to investigate…the facts that go to the defendant's potential sentence, including his or her prior record". *ABA Standards for Criminal Justice: Pleas of Guilty*, Standard 14-3.2 & comment, p. 123 (1999) *See also, ABA Standards for Criminal Justice: Prosecution Function & Defense Function*, Standard 4-5.1(a) & comment, p. 198 (1999) (counsel must "inform[] himself or herself fully on the facts and the law," which includes the duty to "advise[] fully [the defendant] as to…the probable outcome of alternative choices"); *Hudson v. Harrington*, No. 13 C 00678, 2014 WL 4244255, at *7 (N.D. Ill. Aug. 27, 2014) ("as the ABA guidelines make clear, [counsel] should have investigated [petitioner's] criminal history further, even if [petitioner] gave an incomplete recitation").

In *Rompilla*, the Supreme Court considered the reasonableness of a defense lawyer's failure to investigate the circumstances of the defendant's case (specifically, the court file on Rompilla's prior conviction). 545 U.S. at 390. In *Rompilla,* the criminal defendant was actively unhelpful to the attorney's investigation; however, the Supreme Court determined that "counsel's failure to look at the file fell below the line of reasonable practice." *Id.* at 390. Noting that evaluation of an attorney's performance "spawns few hardedged rules," the Supreme Court determined counsel's performance justified a finding of unreasonableness based on: "the ease with which counsel could examine the entire file," counsel's failure to meet the ABA standards for defense representation, and counsel's knowledge "that the prosecutor intend[ed] to use a prior conviction in this way." *Id*. at 381, 386 n.4, 390.

The Seventh Circuit has consistently found that counsel's failure to accurately inform a criminal defendant of sentencing exposure can constitute deficient performance. *See, for example, Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007) (granting habeas petition because "[w]hat [counsel] told [the defendant] about a thirty-year maximum for his sentence was clearly wrong and therefore objectively unreasonable."); *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003) (granting habeas relief and explaining that, in the plea context, "the deficient performance prong is met where the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts") (internal quotation marks omitted); *Washington v. Smith*, 219 F.3d 620, 629 (7th Cir. 2000) (granting habeas relief because counsel's failure to properly investigate sentencing exposure constituted deficient performance); *see also Riggs v. Fairman*, 399 F.3d 1179, 1183 (9th Cir. 2005) (granting habeas petition and explaining that because "counsel had a duty to investigate whether California's three strikes law would be applicable… [counsel's] omission fell below an objective standard of reasonableness").

Guided by the above caselaw, this Court finds that counsel performed unreasonably. Counsel, who represented Brinson for over twelve months before withdrawing from the case, had ample opportunity to learn Brinson's criminal history. He had negotiated a plea agreement to the narcotics charge and should have obtained a fingerprint-generated LEADS criminal history report, which contained Brinson's prior convictions.[6] Yet counsel failed to investigate and determine the

---

[6] Counsel should have informed Brinson of the potential implications from the habitual criminal statute during the initial plea negotiation on the drug charge only.

extent of Brinson's sentencing exposure. (Dkt. 27, Ex. M, 1121:13-23). Even if counsel did not receive the LEADS criminal history report, he could learn Brinson's criminal history from Brinson. Failure to take these steps was unreasonable. *See Rompilla,* 545 U.S. at 386 n.4 (noting the lack of effort required for Rompilla's attorney to conduct the necessary investigation rendered Rompilla's case "correspondingly easy"); *Riggs v. Fairman*, 178 F.Supp.2d 1141, 1148 (C.D. Cal. 2001) ("[T]o forgo spending the single minute or so necessary to request and review the rap sheet, make the phone call or ask Petitioner the necessary question was objectively unreasonable…").

Brinson has satisfied *Strickland*'s unreasonable performance prong.

## 2. Counsel's failure prejudiced Brinson

Having determined that counsel performed unreasonably, the remaining question under *Strickland* is whether Brinson was prejudiced by counsel's failure. To satisfy this element, Brinson must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In the plea context, a petitioner must demonstrate that, but for his counsel's deficiencies, he would have accepted the State's plea offer. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 298 (2012).

When counsel's performance results in a defendant forgoing a plea deal, establishing prejudice has both a subjective and objective element. For the subjective prong, "to demonstrate a reasonable probability that he would have accepted a plea,

12

a petitioner's testimony that he would have done so must be credible." *Merzbacher v. Shearin*, 706 F.3d 356, 366-67 (4th Cir. 2013); *see also Julian v. Bartley*, 495 F.3d 487, 492 (7th Cir. 2007). Brinson must show "that his counsel's advice was 'a decisive factor' in his decision to reject the State's plea offer." *Watson v. Anglin*, 560 F.3d 687, 691 (7th Cir. 2009) (emphasis omitted) (quoting *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996)). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting *Strickland*, 466 U.S. at 693). At the same time, the prejudice standard "does not require a showing that [the] counsel's actions 'more likely than not altered the outcome.'" *Id.* at 792 (citation omitted).

For the objective element, a petitioner must show that "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Overstreet v. Wilson*, 686 F.3d 404, 407 (7th Cir. 2012) (quoting *Missouri v. Frye*, 566 U.S. 134, 149, 132, S.Ct. 1399, 182 L.Ed.2d 379 (2012) (internal quotation marks omitted)). The chance of prejudice need be only "better than negligible." *Canaan v. McBride*, 395 F.3d 376, 386 (7th Cir. 2005); *see also Harris v. Thompson*, 698 F.3d 609, 644-45 (7th Cir. 2012).

Here, the Illinois appellate court determined that Brinson was not prejudiced because (1) Brinson would not have accepted the plea offer, and (2) the trial court would not have accepted the plea offer. The Court shall address each finding in turn. Finally, because neither the post-conviction trial court nor the appellate court addressed whether the state would "have prevented the offer from being accepted or

13

implemented," the Court shall briefly address that issue *de novo*. *Overstreet v. Wilson*, 686 F.3d at 407 (quoting *Missouri v. Frye*, 566 U.S. at 149).

### a. Brinson would have accepted the plea

The appellate court determined that Brinson would not have accepted the plea offer because Brinson "should have known that, by rejecting the plea offer, he was exposing himself to at least the possibility of being convicted of [two] offenses and receiving consecutive sentences that could confine him to prison for the rest of his life." *Brinson*, 2017 IL App (2d) 150319-U ¶¶ 15-16. Respectfully, under *Strickland*, relying on what Brinson "should have known" is not reasonable.[7]

The prejudice analysis—whether there is a reasonable probability that, but for counsel's errors, Brinson would have accepted the twenty-six-year plea deal—is made based on facts as they existed at the time of the error, without the distorting effects of hindsight. *See Miller v. Zatecky*, 820 F.3d 275, 279 (7th Cir. 2016).

The appellate court never addresses the facts as they existed: that counsel failed to inform Brinson about the habitual criminal act. Thus, the appellate court failed to analyze whether this failure created prejudice. Instead, the appellate court speculated that Brinson "should have known" that he was essentially facing two six-to-thirty year sentences that (speculating again) would have been imposed to run consecutively.

---

[7] The state argues that the appellate court made a factual finding that Brinson actually knew he was exposing himself to two consecutive sentences. (Dkt. 28, 7). This Court disagrees. The appellate court concluded that Brinson "should have known" he faced two consecutive sentences based on Illinois sentencing statutes, not based on any testimony by Brinson or anyone else. *Brinson*, 2017 IL App (2d) 150319-U ¶ 15 (citing 730 ILCS 5/5-8-4(h)).

Assuming Brinson would have been convicted (speculating a third time) of the second offense, whether sentences would run consecutively is the type of knowledge that can only come from competent counsel—the type of counsel Brinson lacked. The record is devoid of any indication that counsel informed Brinson that, if convicted of two Class X felonies, his sentences would run consecutively. This is "precisely the type of information that is likely to impact a plea decision" and thus being denied access to it is prejudicial. *Moore*, 348 F.3d at 242-43.

The appellate court's finding no prejudice because Brinson "should have known" he was facing sixty years is clearly unreasonable in this scenario. It is neither the correct legal standard nor a reasonable application of federal law to Brinson's particular facts. The Illinois appellate court ignored counsel's failure to advise about the habitual criminal act and assumed Brinson's conviction on the attempted murder case and then assumed Brinson's understanding about consecutive sentencing. Most problematic is its assumption about Brinson's knowledge of the law.

The appellate court's decision unreasonably applies *Strickland* and *Lafler* in another way. Under those decisions, courts determine prejudice by comparing the disparity between the sentence offered during plea negotiations (twenty-six years) and the sentence imposed (mandatory life). *Julian*, 495 F.3d at 499-500. Although the appellate court acknowledged that "the disparity between the sentence the defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice" *Brinson*, 2017 IL App (2d) 150319-U ¶ 15, (citing *People v. Hale*, 2013 IL 113140, ¶ 15), the appellate court never engaged in this

15

analysis. That is, the appellate court never compared the sentence Brinson was offered (twenty-six years) to the sentence he received (life imprisonment). Instead, the appellate court compared the sentence Brinson "should have known" he was facing (two consecutive six-to-thirty-year terms), with the sentence he received (life imprisonment). *Brinson*, 2017 IL App (2d) 150319-U ¶ 15. ("Thus defendant—who was born in 1957—should have known that, by rejecting the plea offer he was exposing himself to at least the possibility of being convicted of both offenses and receiving consecutive sentences that could confine him to prison for the rest of his life.") This comparison lacks any legal support. Indeed, courts evaluating prejudice consistently look to the former comparison, not the latter. *Julian*, 495 F.3d at 499-500; *Moore*, 348 F.3d at 242-43; *Riggs*, 399 F.3d at 1183; *Hudson*, 2014 WL 4244255, at *8-9. If the appellate court undertook the correct comparison, it would have determined that Brinson suffered prejudice. *See Glover v. United States*, 531 U.S. 198, 203, 121 S.C. 696, 148 L.Ed.2d 604 (2001) (disparity of six months imprisonment is enough to find prejudice); *Wanatee v. Ault*, 259 F.3d 700, 703 (8th Cir. 2001) (finding prejudice with plea of fifty years with parole eligibility versus mandatory life sentence); *Hudson*, 2014 WL 4244255, at *8 (finding prejudice with plea of twenty years versus mandatory life).

The appellate court's analysis also, and importantly, ignores the significant legal and practical differences between two consecutive six-to-thirty-year sentences (assuming Brinson were tried and convicted on the attempted murder charge) and a natural life sentence under Illinois law. Even if Brinson received the appellate court's

hypothetical consecutive sentences, he would have been eligible for sentencing credits and early release. *See* 730 ILCS 5/3-6-3(a)(ii); 5/3-6-3(a)(2.1). A natural life sentence, on the other hand, means no possibility of parole. Brinson spends the rest of his life in prison. *See 730* ILCS 5/3-6-3(a)(2.2). The difference is stark for the person serving the sentence. *See e.g.*, *Julian*, 495 F.3d at 498-99; *Moore*, 348 F.3d at 242-24; *Hudson*, 2014 WL 4244255, at *8. The appellate court's analysis is clearly erroneous, and thus an unreasonable application of *Strickland*. Given the above facts, the only reasonable conclusion is that Brinson suffered prejudice.

The appellate court additionally based its determination that Brinson would not have accepted a plea based on his vigorous defense at trial and his assertion that he was innocent. *Brinson*, 2017 IL App (2d) 150319-U ¶ 16 (Brinson's "insistence on his innocence, combined with his defense tactics, undermines his claim that Abram's allegedly deficient advice was prejudicial, and instead suggests that [Brinson] would have opted for a trial even if he were aware that he faced a possible life sentence").[8] This determination is unreasonable given Brinson's actions and plea negotiations. The record indicates that from the time of his initial arrest, Brinson was willing to enter into a plea agreement. In fact, Brinson *accepted* a seven-year plea deal prior to being arrested and charged with an additional offense. After his second arrest, Brinson continued, through counsel, to discuss a plea to both a controlled substance

---

[8] The State argues that Brinson rejected the plea and mounted a vigorous defense because he believed himself to be innocent. Yet the evidence cited by the State—Brinson's request for private investigators, his defense at trial, and his allocution—all occurred after plea negotiations had run their course and the State's final plea offer expired. (Dkt. 27, Ex. M, 160: 19-20; 201:12-13). On the eve of trial, the State informed Brinson's counsel that "there was no [plea] offer and there would not be one." (Dkt. 35, 3). The State does not cite any authority for the proposition that vigorously defending against a charge after plea negotiations end is a basis to find that a habeas petitioner has not been prejudiced.

offense and attempted murder. Eventually, the State offered Brinson a twenty-six-year plea deal. Brinson rejected the offer. Brinson's rejection of the deal was based on misinformation when his counsel never informed him that he faced mandatory life in prison if convicted—on the drug charge alone. Instead, according to Brinson, counsel believed a lower plea offer was possible. (Dkt. 35, 4). The significant fact is that Brinson did not know that, if convicted, he faced mandatory life in prison and any plea deal would spare him that fate. There is no question the appellate court failed to address these facts in its analysis, and these facts undermine the appellate court's finding that Brinson would not have accepted the twenty-six year deal had he been accurately informed.

Contrary to the appellate court's determination, this Court finds that there is a reasonable probability that Brinson would have accepted the plea if he had known he faced a mandatory life sentence. The wide disparity between the twenty-six-year plea and the mandatory life sentence alone "gives rise to the inference that [Brinson] would have accepted a plea deal." *Hudson*, 2014 WL 4244255, at *8; *see also Julian*, 495 F.3d at 499 (given "the severity of the misinformation, the court concluded that but for the erroneous advice, [petitioner] would not have pled guilty"). This inference is further supported by Brinson's testimony and affidavit, which strongly indicate that he did not have actual knowledge regarding his sentence exposure and that he would have accepted the deal had he known he was facing life: "I would have took that offer if I knew I was facing life" because "at least I would have a chance to be

free again." (Dkt. 27, Ex. M, 1119:13; 1120:7).[9] Given the state appellate court's unreasonable determination, this Court need not defer to that decision.

### b. State would not have withdrawn the plea

In its response brief, the State briefly argues that it would have withdrawn its offer before presenting it to the trial court. (Dkt. 28, 13). Neither the post-conviction trial court nor the appellate court addressed this element of the analysis. Accordingly, the Court evaluates this question *de novo. See Woolley v. Rednour*, 702 F.3d 411, 421-22 (7th Cir. 2012).

The State claims that it would have withdrawn the twenty-six year plea deal because, when it made the deal, it was unaware that Brinson had two prior convictions subjecting him to the habitual criminal statute. (Dkt 28, 13). The only evidence in support of this assertion is the prosecutor's statement at sentencing that he was initially unaware that Brinson had two qualifying convictions. (Dkt. 27, Ex. M, 907:17-18). According to the State, "it is a reasonable inference that when petitioner's full criminal history was presented to the trial court for its consideration of the plea agreement, the State would have become aware of its error and withdrawn the plea offer." (Dkt. 28, 13).

---

[9] The trial court "discredited [Brinson's] testimony that he would have accepted the State's offer had he known of the risk that he would receive a life sentence." *Brinson*, 2017 IL App (2d) 150319-U ¶ 13. It is well-settled that "a state court's finding on a factual issue made after a hearing on the merits is presumed correct" and credibility determinations are "accorded particular deference." *Sprotsy v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996) (citing 28 U.S.C. § 2254(d)(8) and *Thompson v. Keohane*, 516 U.S. 99, 110 (1995)). Here, the appellate court—the decision this Court must review—did not rely on the trial court's credibility finding. The appellate court instead relied on what Brinson "should have known" and Brinson's vigorous defense at trial. This Court finds this was an erroneous application of federal law. As the appellate court did not rely on the trial court's credibility determination, this Court did not consider it.

First, the State's own failure to thoroughly investigate Brinson's file cannot serve as a defense to Brinson's ineffective assistance of counsel claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 379, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("The Sixth Amendment mandates that the State bear the risk of constitutionally deficient assistance of counsel."). It too had a copy of Brinson's LEADS sheet. Second, even if the State was unaware of Brinson's second conviction for armed robbery, it was aware of the first conviction, (Dkt. 27, Ex. M, 907), and aware that he had two new cases pending, the second committed while on bond for the first. Faced with that information, it was willing to offer a twenty-six-year sentence. That is a serious sentence to a fifty-year-old man with serious health issues.[10] *See Hudson v. Harrington,* 2014 WL 4244255 at *9 (concluding that the evidence shows that the State would have made the plea offer and the trial court would have accepted it "as adequately as any evidence can in such a hypothetical scenario").

### c. A court would have accepted the twenty-six-year deal

The final element of prejudice requires a showing that there is a reasonable probability the trial court would have accepted the plea agreement. This prong of prejudice under *Strickland* is to be measured objectively. *See Peterson v. Douma*, 751 F.3d 524, 532 (7th Cir. 2014) (under *Strickland*, the inquiry into whether the trial court would have accepted the plea "is an objective one"); *see also Strickland*, 466 U.S. at 694; *Lafler*, 566 U.S. at 164. The reasonable-probability determination must ignore "the idiosyncracies [sic] of the particular decision maker" and assume that he is

---

[10] The State lowered its original offer from thirty-two years to twenty-six years, (Dkt. 27, Ex. N), reflecting its willingness to entice Brinson to plead guilty.

"reasonabl[e], conscientious[], and impartial[]." *Strickland*, 466 U.S. at 694. Under this rule, "evidence about the actual process of decision…and evidence about…a particular judge's sentencing practices, should not be considered in the prejudice determination." *Id.*

The Illinois appellate court unquestionably misapplied this rule since it relied solely on what the trial judge in question said: he stated during the post-conviction proceedings that he "probably would not" have accepted the plea agreement. *Brinson*, 2017 IL App (2d) 150319-U ¶ 17. But that is, by definition, not the "objective prejudice analysis" *Strickland* requires. *See, for example, Peterson*, 751 F.3d at 532 (holding that "the *Strickland* prejudice inquiry is an objective one and cannot rest solely on the trial judge's say-so"); *Raygoza v. Hulick*, 474 F.3d 958, 964 (7th Cir. 2007) ("we cannot accept as conclusive the trial judge's statement that the new evidence would not have made any difference to the outcome of the case"); *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997) (holding that even when a judge who presided over the original trial asserts in a post-conviction proceeding that petitioner's "additional evidence would not have changed his mind…[t]his cannot, however, be conclusive"); *Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012) (granting habeas relief based on ineffective assistance; state court improperly relied on trial judge's statement that greater diligence by counsel would not have changed his mind);[11] *Saranchak v. Beard*,

---

[11] The State relies on statements the trial court made at the sentencing to argue that the court would not have accepted the plea. (Dkt. 28, 12-13) (citing Dkt. 27, Ex. M, 961:1-2; 961:21-962:20). (Brinson had been on "a one-man crime spree since 1974" and "cannot be trusted to act safely in society.") But like the appellate court, this argument by the State incorrectly focuses on the trial judge's subjective opinion. It does not help this Court

616 F.3d 292, 309 (3d Cir. 2010) (explaining that state appellate court applied a rule contrary to *Strickland* "by considering the effect the new evidence would have had on that particular judge….rather than considering, more abstractly, the effect the same evidence would have had on an unspecified, objective fact finder").

The appellate court did not engage in this objective inquiry. Instead of examining whether a hypothetical, objective judge would have accepted the plea agreement, the appellate court rested on the trial court's statement—the same judge who oversaw Brinson's trial, sentencing, and post-conviction proceedings—that it would not have accepted the agreement. This is not only the incorrect rule, but an unreasonable application of *Strickland*.

The Illinois appellate court employed an incorrect standard when evaluating this element. Its determination that a court would not have accepted Brinson's plea is accordingly unreasonable. However, that does not end our analysis. The Court must engage in a hypothetical analysis and determine whether there is a reasonable probability that an objective decision-maker would have accepted the plea agreement.

This Court believes that Brinson has satisfied this final element. Courts generally "defer to [the parties'] negotiated agreement in the vast majority of cases," given the parties' superior knowledge and the substantial judicial resources saved through plea bargaining. *Green v. Attorney Gen., State of Fla.*, 193 F.Supp.3d 1274, 1287 (M.D. Fla. 2016). The Illinois Supreme Court has encouraged plea bargaining

---

determine whether the "unspecified, objective factfinder" would have accepted a plea to twenty-six years from a fifty-year-old man. *Saranchak v. Beard*, 616 F.3d at 309.

based on its "firmly rooted view that the plea-bargaining process, and the negotiated plea agreements that result from that process, are vital to and highly desirable for our criminal justice system." *People v. Henderson*, 890 N.E.2d 1224, 1231 (Ill. 2004). Furthermore, in Illinois, while judges retain discretion to reject a proposed plea agreement, that discretion is limited. *People v. Allen*, 815 N.E.2d 426, 430 (Ill. App. Ct. 2004) ("Just because a court may reject a proposed plea agreement, it does not follow that a court may reject one for any reason at all"); *People v. Hudson*, 95 N.E.3d 1148 (Ill. App. Ct. 2017) (finding trial court abused its discretion in rejecting plea).

Applying these principles, there is a reasonable probability that an objective decision-maker would have accepted the plea agreement. Under the agreement, Brinson would have been sentenced to serve a substantial sentence of twenty-six years. His twenty-year plea for attempted murder is at the high end of the statutory range of six to thirty years imprisonment for that offense. *See* 720 ILCS 5/8-4(c); 730 ILCS 5/5-4.5-25(a). Additionally, at the time of the plea offer, Brinson was fifty years old and had significant health issues. His two earlier convictions that qualified him for the habitual criminal statute were committed in 1978 and 1986, decades before his 2007 conviction. It is reasonably probable that a trial court would have accepted a plea agreement that resolved two separate trials and imposed six years on the drug charge consecutive to twenty years on the attempt murder charge.

## 3. Remedy

Even if a petitioner shows ineffective assistance of counsel caused the rejection of a plea leading to a trial with a more severe sentence, there is a remaining question

of what constitutes the appropriate remedy. Generally, Sixth Amendment remedies should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Lafler*, 566 U.S. at 170 (citing *United States v. Morrison*, 499 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). Thus, the remedy must "neutralize the taint" of a constitutional violation, while at the same time not grant a "windfall" to the defendant. *Id.* In *Lafler v. Cooper*, the Supreme Court explained there are generally two forms of prejudice that a criminal defendant could suffer during plea negotiations. *Id.* One form arises where the criminal defendant was offered a lesser sentence on a charge, rejected the plea offer, and then was convicted of the same charge. In that case, the state trial court "may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Id.* The second form of prejudice arises where "resentencing alone will not be full redress for the constitutional injury" because the constitutional violation led to a mandatory sentence. *Id.* at 171. Here, based on the adjudication of Brinson as a habitual criminal, the state sentencing judge would indeed be constrained to impose the same mandatory life imprisonment term in a resentencing hearing on the trial conviction. Accordingly, some other relief is required.

Neither party presents the Court with a potential remedy. In *Hudson v. Harrington*, the State suggested, if the petition was granted, "the proper remedy [was] to require the State to reoffer the first plea offer." *Hudson*, 2014 WL 4244255, at *9. That is what this Court will do. The Court requires the State to reoffer its

24

twenty-six year plea to Mr. Brinson for an offense that will not carry a mandatory life sentence under the habitual criminal act (now repealed). This remedy "best places the parties at the beginning of the plea process." *Id.*

In order to give the State an opportunity to appeal the issuance of this writ, the plea offer must be made by September 4, 2020. If the State decides to appeal, it is free to ask this Court to stay the writ until after the appellate court's decision.

E N T E R:

Dated: July 16, 2020

_____

MARY M. ROWLAND

United States District Judge

25